May it please the Court, I'm Robert Jobe. I'm appearing today on behalf of the petitioner Mahbub Hossain. After an immigration judge denied Mr. Hossain's applications for asylum, withholding of removal, and relief under the Convention Against Torture, Mr. Hossain hired an attorney, Horesh Jambusaria, to represent him before the BIA. According to Mr. Jambusaria himself, Mr. Hossain paid him $4,500 to represent him before the Board. But Mr. Jambusaria never filed any brief in support of the appeal. Now, Mr. Jambusaria blames Mr. Hossain, saying that Mr. Hossain was going to bring him some additional evidence. We know that that's not a legitimate excuse because the Board doesn't take additional evidence when it's on appeal. The appropriate way to introduce evidence to the Board would have been a motion to remand. He blames FedEx then, but the Board, and this is on page 891 of the record, when the Board rejected the brief, the Board said, you have a remedy here. Your remedy is to file a motion to accept a late brief. But Mr. Jambusaria made no effort to file any such motion. He made no effort to explain that there was a FedEx mistake. So he didn't file a brief at the BIA. And this caused some serious prejudice in this case. And if I could, I'd just like to walk through the immigration judge's decision so that I can point out what could have been argued to the BIA if Mr. Jambusaria had gotten it together and actually submitted a brief. Counselor, are we really at prejudice? It seems to me that what the BIA was really dealing with is diligence. Well, that is a threshold question, Your Honor. I mean, and we got two questions. You've been here probably all morning and know that that's what I got into in one of the other situations. We're talking about diligence. It's my understanding that the Petitioner acknowledges he was informed of the decision on February the 9th of 2006. In fact, the decision was read to him, and they agreed to file a petition for review. Right. Again, Your Honor, that is not going to put him on notice that the brief was rejected, that the attorney's brief was rejected, because the decision doesn't mention anything about an appellate brief having been rejected. The decision says the case was denied on the merits. So that doesn't put him on notice that there even was attorney error here. I mean, Mr. Well, the Ninth Circuit denied his petition in October 2007. Exactly. New counsel was sought. New counsel told him of the potential claim on November the 12th, 2007. Exactly. Even if we wait until then, you're late. No, that's not true. November 12th was the day we informed him that he had a no brief had been submitted to the BIA. He filed his motion to reopen at the BIA on February 11th within the 90-day period. On that point, the Board's just wrong. How do these facts compare to Avagian? There we held that the Petitioner first had notice or had reason to suspect that counsel's performance was deficient when the BIA denied the Petitioner's claim. Isn't that true here as well, especially in light of the fact that your client is a trained lawyer himself? Well, he's a trained lawyer in Bangladesh. That doesn't tell us that he knows anything about American law. But the point here is that he's Well, he indicated that counsel had insufficiently prepared him for the hearing, right? So he's a trained lawyer, albeit in a different judicial system. But he shows up at the hearing. He knows that counsel, by his own description, didn't prepare him adequately for some of the issues that came up. Let's say he wasn't quite alerted to the deficiency then, but then subsequently the BIA denied his claim and laid out the reasons why the claim was denied. That was read to him. So why wouldn't that alert a reasonable attorney with the same kind of legal training that he'd had to the fact that counsel's performance might have been deficient? The IAC claims that we're focused on here in the court of appeals, Your Honor, are twofold. It's the failure to file a brief with the BIA, which is not something that occurred before the immigration judge, and it's the failure to represent him properly in the court of appeals. Now, it's undisputed that, according to Mr. Hossain's declaration, he learned for the first time that the brief that Mr. Jambusaria had prepared was rejected by the BIA. He learned that for the first time on November 12, 2007. Now, Mr. Jambusaria responds to that, and this is on page 33 of the record. He does not dispute Mr. Hossain's claim that he never told him that the brief had been rejected. For the first time, he learned about the rejection of the brief on November 12 of 2007. And it's our view that as far as that aspect of the ineffective assistance of counsel claim goes, the period for filing a motion to reopen would have been told up until that date when he first learned definitively that the brief had been rejected. If you look at the filing here by Mr. Jambusaria, he denies that Mr. Hossain knew that his brief had been filed late, but that's something quite different from knowing that the brief had been rejected. The brief, in fact, had never been filed at all. It was submitted, and Mr. Jambusaria claims throughout this thing that it was filed late, but, in fact, it was never filed. To this day, he's continuing to insist that the brief was simply filed late when it was rejected. So it's our view that the tolling, the period for filing a motion to reopen would have been told until he learned of that deficiency, and then he had 90 days from that date to file, and he filed a timely motion. So it's our view that the real issue here is prejudice. And as far as prejudice goes, again, if, Your Honor ---- Kennedy, going to prejudice, that's the merits, right? Well, it's what could have been argued if Mr. Jambusaria had performed adequately at the Board of Immigration Appeals. And this is a troubling case for me, because this is a case ---- I mean, the problem that I have with this, when we get to the prejudice and the merits, is that the Board has not only your client's idea or the petitioner's idea of what happens in this case, but the Board also has the other attorney, Jambusaria's, idea with his. So knowing what I've got to do on an alternative finding and knowing that substantial evidence is all that you've got to have, I'm having a tough time. I think his response is irrelevant to the issue of prejudice, because it's undisputed that no brief was filed. The real issue is, could he have filed a brief that would have ---- might have made a difference? That's the issue. And if you go through this decision here, for example, the immigration judge said there's no connection between the father's attack and this Respondent. This is on page 1073 of the I ---- of the record. It's the IG's decision. Well, in the testimony, found credible, Mr. Hotezain testified that they came to visit his father, looking for him, demanding his whereabouts, and when the father wouldn't give up the whereabouts, they beat him and he suffered a heart attack. Of course there's a connection, but it was never argued to the BIA. The immigration judge said on page 1073 that if you wait more than six months after a change in circumstance, you're barred from making a changed circumstance argument. That's wrong. This Court ruled in Taslimi v. Holder that it's ---- there is no six-month limit. It gets worse. On page 1074, the IJ said, well, you can't ---- there's no ---- if there's one changed circumstance, you can't have further changed circumstances. Not every time something changes does that justify filing a new asylum application. This Court rejected exactly that reasoning in Vahora v. Holder. There are many, many things that you can do. Well, that isn't what they rejected. They said in Vahora there was a big change, a gigantic change at that particular time, and it was a year before it was filed. But they certainly weren't saying that you could have the same thing, just ups and downs with the same stuff, and that that's enough. Now, what the Court said, Your Honor, that was my case, and what the Court said there was even though this guy previously had a clear probability of persecution, there were changes that made his situation even more dire. Well, I understand that. But that doesn't ---- what the Court focused in on was the ---- if I read it correctly, and maybe you can help me since you were the counsel, the Court focused in on the events that were happening in the country at the time. Exactly. Not changes to the individual, if you will, circumstances of the petitioner himself. Either ---- under the law, Your Honor, either one would matter. That would not affect the analysis. The statute is plain on that. But going back to the decision ---- I guess it isn't quite as plain as I would say that if there's no change in what happens to this particular petitioner, if he's just ---- if he's got the same kind of stuff happening, or if the same kind of stuff's happening in the country, there's no change in that, then I'm having a tough time seeing why just because some conflagration happens a year before that it matters. Well, Your Honor, if you don't think that the issuance of two arrest warrants is a significant change in circumstances, then we're just never going to agree on the results of this case. Because obviously ---- Well, I ---- frankly, I'm asking what it is. And evidently you think the two arrest warrants is it. Yes. Well, that's what I was asking for. Yes. What is the change? The two warrants for his arrest were a clear change in circumstance, putting him at greater danger, not only of persecution, but another thing that was never argued to the BIA, you know, and I ---- this is frustrating because I really wanted to cover this decision. For example, he never even addressed the CAC claim. It's undisputed that there are warrants for this person's arrest. It's also undisputed ---- But the issue of the warrants actually was presented by counsel before the IJ. The IJ addressed that specifically in the ---- addressed the changed circumstances argument and the evidence supporting that in the IJ's decision. And so before the BIA, the BIA had the benefit of the IJ's decision. Why doesn't that work? Because it was never argued to the BIA that this, in fact, was a changed circumstance. The immigration judge said there's no unaccounta. He discounted the warrant because he didn't find any link to this person's political activity. And that's something that should have been briefed to the BIA because if you look at the country ---- So the BIA had the benefit of the evidence that was presented before the IJ in the IJ decision. You're saying that had it been argued to the BIA in the briefing, it might have made a difference. Of course it might have made a difference because what he could have done is he could have pointed to pages 1166 and 1167, the State Department report, which makes crystal clear that the government was engaged systematically in arresting, issuing arrest warrants and arresting political opponents on a pretextual basis. But that was never argued to the BIA. If it had been argued, this is a case that easily could have gone the other way. Thank you. Your time has expired. Thank you, Your Honor. May it please the Court. Lisa Damiano on behalf of the Attorney General. Good morning to you all. As we know, the issue in this case is whether the Board abused its discretion when it denied Mr. Hossain's unquestionably untimely motion to reopen. More specifically, did the Board act irrationally, did it act arbitrarily or contrary to law in determining that equitable tolling was not warranted because this particular Petitioner didn't exercise due diligence in the pursuit of his claims, and further, he didn't demonstrate the requisite error or prejudice to satisfy the ineffective assistance of counsel claim. Now, to give this some context, Mr. Hossain, as was mentioned, is an attorney in his home country and admittedly fluent in English, which he admitted on the record to the immigration judge. He entered this country in January 2001 on a student visa, and he violated his immigration status a mere two weeks later. Now, he claims to be fleeing from his home country because of persecution, but rather than seek any advice on his legal options, rather than hire counsel, he waited over two years until February 2003 to hire his former attorney. And he did so not because he wanted to file for asylum, but because he had to face an NSEERS registration requirement. Now, when he hired Mr. Jambusaria in February 2003, he had already known that people in his home country were looking for him and out to get him. He claims that his father was visited in December of 2002, and that his father was threatened and then subsequently had a heart attack in January of 2003. He hires Mr. Jambusaria one month later, and he doesn't pursue an asylum claim. He instead pursues an employment-based case, which is in the evidence in the record and as stated by Mr. Jambusaria. He eventually files the asylum claim, but the agency denied it because of the one-year bar and the judge specifically cited to those circumstances that post-date his entry into the United States and say these do not amount to the exception, circumstances to show changed country conditions for an exception to the one-year bar. All of those events, the arrest warrants, the visit to the home by fundamentalists, the threats to his father, all occurred and all were before the immigration judge, and the judge determined that they did not rise to the level of changed country conditions such that the one-year bar could be waived. So he waits over two years, then, after the board's final disposition of his asylum claim, and he now asserts in the untimely motion to reopen the ineffective assistance of counsel. What about counsel's claim he's relying on the IAC ineffective assistance at the board level by failing to file the brief, which admittedly Mr. Hussain didn't know about? Well, first of all, we would argue, or we do argue that he was not prevented from knowing about that by any fraud or deception, and that he should have been put on notice. A reasonable person in his position would have been on notice to request his files, seek another opinion, or to at least do some research into his claim, because as this court said in the Avagyon decision, what would a reasonable person in the position of this particular petitioner do? What would they suspect? As Your Honor mentioned, he suspected that he was receiving ineffective assistance as early as 2004, because he claims that his attorney didn't prepare him for his hearing, didn't provide a list of documents, didn't explain how the relief was to be obtained or how he would show that he was eligible, and didn't ask him any questions during that hearing. Even though he already suspected or had concerns about the fact that his attorney was not effective, he didn't do anything to research the matter. And when the board's decision came out in 2006, he didn't do anything to look into the matter or discover if there was ineffective assistance, and that's simply not diligence. Now, to the point about the brief, we argue that the board considered all of those issues on the merits. The board knew of the changed circumstances argument, because in this case, the former attorney submitted a notice of appeal that was pretty thorough in terms of the issues that he raised. He raised that the decisions were incorrect on the law. He raised that there were changed circumstances. Now, he didn't present very thorough arguments, as maybe would be presented in a full brief, but he presented the changed circumstances argument. The board had the benefit of that. They considered that on the merits. They had all of the documents presented by the Petitioner, and they determined this simply wasn't enough to show changed circumstances for the one-year bar, and they affirmed the judge's decision. So we argue that regardless of the fact that a trial brief wasn't submitted, that the — that fact, in the end, for the prejudice prong, shouldn't matter because the board considered the issue on the merits. But in terms of diligence, Petitioner should have been aware or on alert that this attorney may be providing ineffective assistance as an English-speaking attorney from a foreign country. And he should have sought out a second opinion much, much sooner than 2007 when he did so. You agree, don't you, that if the best — if the first time he knows his case in November 2007, that he did file in insufficient time? Well, we're arguing that a reasonable person would have suspected long before and that he would have been on notice as early as 2004, but certainly in February of 2006, when the board issued its decision denying his claims on the merits, that he should have sought — at least requested his file, sought another attorney's opinion or something along those lines. We're not dealing with the average petitioner who is uneducated or trying to kind of sort through all of the labyrinth of laws here. This person was equipped with the tools. He may be a lawyer in Bangladesh, but he's certainly equipped with the tools to know that something might be amiss and that — the tools to seek another attorney's opinion on his case. We think that he definitely learned of the harm resulting from these perceived deficiencies as early as 2004, which is why we're saying there's no diligence, but certainly by 2006 when the board denied his claim on the merits. And he hasn't shown that Mr. Jambusaria prevented him from learning that the brief wasn't filed by any fraud or deception. He just simply didn't request his file. He didn't request any further information. And this goes to a pattern with this petitioner of waiting and waiting and not diligently pursuing his relief throughout his stay in the United States. Now, if the court finds that — Let me ask you, what about this Vohora case? Well, as Your Honor mentioned, the Vohora case addressed a very severe change in country conditions where thousands of Muslims were killed. I think 100,000 were displaced. That was a very serious situation that the court found to be a quintessential change country condition. Excuse me. Here we have a situation where petitioner had harm befall him before he left his home country in 2000. And then he knew that his father had been threatened and that people were looking for him in late 2002. And he still doesn't file his asylum application until November of 2003. Now, yes, there is an arrest warrant that's later issued, and then there was another summons issued in September of 2004, I believe. But, again, these are not major changes in circumstances. They all are part of the original basis for his claim. But Vohora does say, and this is the language that I read that is of some concern, there can be changed circumstances which materially affect the applicant's eligibility for asylum even if the alien always meant to apply for asylum and always feared persecution. As a result, the applicant is not required to file when his claim appears to him to be weak. Rather, he may wait until circumstances change. And the new facts make it substantially more likely that his claim will entitle him to relief. Why does that not apply here? Well, it may. I mean, it certainly is debatable whether it does apply. I mean, that's a matter of argument. However, this case is not about whether the judge applied the correct standard for changed circumstances. This case is about whether this petitioner showed diligence in pursuing his ineffective assistance of counsel claim. He wants another bite at the apple, so to speak, because he wants to make as thorough an argument as possible on his asylum claim. And I understand that. But he was on alert that something was amiss as early as 2004. He's educated. He speaks English. He's an attorney. Yet he waited and waited until, in his own words, there was no hope left of remaining in the U.S. until his friend said, hey, go see my lawyer. And so he did after this court denied his first petition for review. Instead of diligently pursuing his claims, he just kept waiting and waiting until he had no hope left. And that's when he finally sought a second opinion in his case. Counsel, I'd like to ask you just one question. And I recognize we've gone over the time, but I assume Judge Smith will not and Judge Winn won't object. My question is this. How often really do immigrants, whether they're legal or on legal status or illegal status in the U.S., how often do they ask for their own files to review as opposed to relying on their counsel? Because the one part of this case that's gotten me a bit mystified is the idea that how would he know that his lawyer didn't file the brief? Well, Your Honor, I don't have any direct statistics on it. I don't know for sure how often an alien or noncitizen requests their file. I could tell you that this particular petitioner didn't request a copy of the board's decision either. He claims that the attorney didn't give it to him, but he didn't ask for one. He didn't ask for the decision to review in his own, of his own right, and he actually had the tools in order to read that decision and determine what was going on in his case. So I don't know how often files are requested. I do know that when a petitioner wants to seek a second opinion, they usually do then request a file. But again ---- I suspect their lawyer's a problem. Like, I really wonder how often they would look at a file themselves. So I practiced law for 25 years. I doubt that I had clients, you know, who went to the court and said, give us the pleading file on this case that lawyer Gould is handling. You know, maybe it happened, but I kind of doubt it. If someone asked a lawyer to give a second opinion, of course, they would know how to do that. But it seems to me not too realistic, even for a person who's a lawyer in their own country. Well, Your Honor, I understand your point, and it's well taken. And I just ---- we, you know, emphasize that the Evagian case says to look at the case in a fact-specific way with regard to the particular circumstances of that particular petitioner. And this particular petitioner was fluent in English, an attorney, well educated, and suspected his attorney was not doing his job as early as 2004, yet did not do anything to find out what was going on with his case and if he had a better claim. If Your Honor? Your time has gone. Okay. Thank you, Your Honor. Thank you. Your time has gone, too, Counselor. We're at the end of the day. I'll give you a minute. I'm not normal to do that, but I know Judge Gould, who is presiding, would give it to you, so I'll do it. Thank you. Thank you, Judge Gould. I just want to say, I mean, your point, Your Honor. I would say thank Judge Smith. I thank Judge Smith as well. I litigated with him. He was always gracious, even though his client got the money at the end. But I just want to say, Your Honor, the point that you're making, that's the law of our circuit. The law of our circuit is that when an alien is consistently represented by counsel and he is assured by that counsel that things are progressing on the right track, he has the right to rely on the assurances of his counsel. And as long as he's relying on the assurances of counsel that he's retained and he's consistently got legal representation, he is exercising, by definition, due diligence. The case on that is Ray and the citation, well, I could provide that in a 28-J letter, but the case is Ray versus Holman. You don't need to provide it, Counselor. I know it already. The only other thing I wanted to say here, Your Honor, is, I mean, if you look at the judge's decision, this is on page 1075 of the record, he discounted the warrant. He refused to consider the warrant as a changed circumstance or even in the equation of whether or not this person has a fear of future persecution because he said, I do not find a nexus, the warrant, any nexus between the warrant and one of the five enumerated grounds. Well, the lawyer never even argued the point to the BIA. I mean, there's plenty of evidence here. As I was saying before, that there was a this was standard operating and procedure at this time that the police were issuing warrants to round up political activists, but he never made the point in a brief. Obviously, it's important. All right. You've had your minute and you've had extra, so we'll quit. Thank you, Your Honor. Thank you very much. Case 08-73528 and 09-70102 are hereby submitted. Thank you, Counselor. Thank you, both of you, for your argument today. We will be in adjournment. Good night. Good night. This court for this session stands adjourned.
judges: Gould, Smith, Nguyen